FILED

NOT FOR PUBLICATION

SEP 27 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

JOHN SCHNEIDER, on behalf of himself
and all others similarly situated,

              Plaintiff - Appellant,

     v.

VERIZON INTERNET SERVICES, INC.;
GTE.NET LLC, DBA Verizon Internet
Solutions,

              Defendants - Appellees.

No. 09-55580

D.C. No. 2:08-cv-07856-R-CW

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted June 9, 2010
Pasadena, California

Before:    TROTT and W. FLETCHER, Circuit Judges, and BREYER,
           District Judge.[**]

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Charles R. Breyer, United States District Judge for the
Northern District of California, sitting by designation.

This case concerns the application of California's statutory restrictions on liquidated damages clauses in the context of early termination fees. Plaintiff entered into a defined-length contract with Defendants for the provision of internet access. The contract further provided for the payment of an early termination fee ("ETF") of $99 if Plaintiff chose to terminate his service before the expiration of his contract. Plaintiff chose to terminate his service early, and so was forced to pay the ETF. Plaintiff argues that this early termination fee constitutes a liquidated damages clause, and that such a clause is void under California Civil Code § 1671. The district court dismissed Plaintiff's action with prejudice for failure to state a claim. Plaintiff timely appealed. This Court has jurisdiction under 28 U.S.C. § 1291, and we AFFIRM the judgment of the district court as to the 12(b)(6) dismissal. However, the case is REMANDED so that Plaintiff can amend his complaint and seek relief on different grounds.

Defendant Verizon offers a variety of plans by which a consumer can gain access to its fiber optic internet service. Verizon offers month-to-month internet service, as well as one and two year subscriptions. Customers who sign up for a month-to-month plan incur an installation fee of $79.99, with the option of setting up additional computers for $89.99 each. Customers who sign up for at least a one-year subscription receive free installation on the primary computer. Customers

2

who sign up for the one-year plan also receive a monthly discount of approximately $10 compared to the fee for a month-to-month plan.

Schneider signed up for Verizon's service some time in 2005 or 2006. He cancelled his service in August 2008 to obtain less expensive Internet service from another provider. Soon thereafter, Verizon imposed the ETF.[1]

Plaintiff sought relief by filing this action. On January 26, 2009, Verizon moved to dismiss the complaint for failure to state a claim. The District Court granted the motion with prejudice. We review such an order de novo. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1053-54 (9th Cir. 2008).

The central controversy in this case is whether the ETF imposed on Plaintiff constitutes a liquidated damages provision that is subject to California Civil Code § 1671. The California Supreme Court addressed a similar clause in *Blank v. Borden*, 11 Cal. 3d 963 (1974). *Blank* arose from a legal action brought by a real estate broker against a property owner who violated an exclusive-right-to-sell contract. The contract provided that if the property owner chose to back out before the natural expiration of the contract, she would pay the broker a pre-determined

---

[1] Plaintiff appears to concede that the ETF was imposed in a manner consistent with the terms of the contract, and yet it is apparent that the ETF was imposed more than more year after Plaintiff signed up for service. Plaintiff has suggested that the contract was renewed without his notice, but this is not plead in the complaint.

fee. *Blank* concluded that "the withdrawal-from-sale clause in an exclusive-right-to-sell contract [is] not . . . a void penalty provision." *Id.* at 970. It explained that the clause provided "a true option or alternative: if, during the term of an exclusive-right-to-sell contract, the owner changes his mind and decides that he does not wish to sell the subject property after all, he retains the power to terminate the agent's otherwise exclusive right through the payment of a sum certain set forth in the contract." *Id.*

The same is true here. Plaintiff availed himself of a defined-length plan that included certain discounts on up-front fees—fees that he would have incurred in a month-to-month plan. He did so, however, with the knowledge that if he wished to terminate the contract early, it would result in a set fee. This presented Plaintiff with a rational choice: he took advantage of lower fees, but with the possibility of an ETF if he cancelled the service early. Under *Blank*, such a clause is not a penalty provision. *See also Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1314 (2005) ("Where a contract for a specified period of time permits a party to terminate the agreement before its expiration in exchange for a lump-sum monetary payment, the payment is considered merely an alternative to performance, and not a penalty."). The district court was therefore correct to dismiss this claim.

4

The dissent reads *Blank* differently. It argues that the ETF in this case, unlike the fee paid in *Blank*, imposed a net financial loss on Plaintiff.[2] In *Blank*, the property owner chose to keep the property and pay a fee, rather than sell the property. Both options, according to the dissent, might appeal to a rational owner. The ETF in this case, according to the dissent, amounted to a choice between paying the ETF or simply allowing the contract to expire naturally, without any further cost.

This analysis fails to account for *Blank*'s admonition that it is not whether the choice is "rational" when a party makes it—e.g., at the time a consumer is considering terminating his contract early—but only whether it is rational when "viewed from the time of making the contract." 11 Cal. 3d at 971. As noted above, when Plaintiff agreed to this contract, Defendant correspondingly agreed to waive an installation fee of $79.99. Defendant also agreed to charge a discounted monthly rate. Therefore, when Plaintiff chose to terminate the contract, he had already accrued a $79.99 benefit in addition to a $10-per-month discount on the monthly fee when compared to the month-to-month plan. Therefore, the discounts

---

[2] The dissent concedes that, for the majority of the contractual period, the ETF provision was a net financial benefit to consumers. This is so because choosing to terminate early in the contract, and paying the $99 fee, is less expensive than paying the remaining monthly payments.

5

obtained by virtue of the year-long agreement would quickly add up to more than the ETF. By the third month of a contract, a consumer has accrued a benefit worth $99.99 compared to what he would have paid under a month-to-month contract for comparable service. For Plaintiff in this case, who cancelled the contract far later, he accrued a discount that far outweighed the $99 ETF. Therefore, a consumer at the time of the contract might reasonably foresee performing either "alternative" encompassed in the contract.

Moreover, even if the consumer could foresee the ETF as a more expensive option than simply allowing the contract to expire, this does not doom the clause under *Blank*. *Blank* does not require than an alternative performance provision offer choices with precisely equal out-of-pocket costs.[3] On the contrary, it defines liquidated damages clauses in a far more narrow fashion. Such a clause "realistically contemplates *no element of free rational choice* on the part of the obligor insofar as his performance is concerned." *Id.* (emphasis added). Even if the ETF were a somewhat more expensive option than permitting the agreement to expire, this does not mean that it "contemplates no element of free rational choice."

---

[3] Indeed, *Blank* could not do so without contradicting prior California Supreme Court case law. *See* Garrett v. Coast & Southern Federal Savings & Loan Assoc., 9 Cal. 3d 731, 736 (1973) (discussing Thompson v. Gorner, 104 Cal. 168 (1894)).

On the contrary, as the dissent explains, paying the ETF affords a consumer certain benefits, such as the ability to move without retaining internet service at a prior residence.

The dissent seeks to impose a rigidity to the "alternative performance" test that is not evident in the California Supreme Court's opinions. On the contrary, the relevant opinions emphasize a range of different issues, all in the service of determining whether a given contract's alternative provisions are reasonable. Given the trade-off that is manifest in the structure of this contract, it is certainly reasonable for a consumer to trade a year-long commitment for the possibility of substantial discounts over the life of the contract.

Dismissal was also appropriate with regard to Plaintiff's other claims. First, as to Plaintiff's claim for unconscionability, the ETF here does not shock the conscience. *See 24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1213 (1998). As the above analysis reflects, Plaintiff faced a rational choice upon entering into his contract with Defendant: he took advantage of lower up-front costs in exchange for a longer term contract, with the understanding that he would pay an ETF if he chose to terminate his service early. Indeed, in <u>Morris</u> the California Court of Appeals concluded that a $150 termination fee was not substantively unconscionable, explaining that "Morris has made no allegation that

7

National's termination fee is grossly out of line with fees charged by other banks. Nor has Morris alleged any facts demonstrating the California banking industry is oligopolistic." 128 Cal. App. 4th at 1323. Schneider has similarly failed to make any such allegations.

Similarly, as to Plaintiff's claim under California's Consumer's Legal Remedies Act ("CRLA"), the complaint frames the issue as entirely derivative of Plaintiff's other claims. Therefore, if there is no violation of § 1671 and no claim for unconscionability, the CRLA claim must fail as well.

Finally, Plaintiff contends that he should have been granted leave to amend. The district judge never discussed at the hearing whether dismissal would be with or without prejudice. The prospect of a prejudicial dismissal was first raised when Defendant—at the district judge's request—submitted a proposed order dismissing the case. Even though the issue had not been discussed at the hearing, the proposed order indicated that dismissal was without leave to amend. Plaintiff filed an objection to the proposed order, noting that "[t]he Court did not state [at the hearing] that the motion was granted with prejudice." Plaintiff requested "that the Court grant him leave to amend pursuant to the liberal standards of Fed. R. Civ. P. 15(A)." However, the Court signed Defendant's proposed order without addressing Plaintiff's request. This was an error. *See Manzarek v. St. Paul Fire &*

8

*Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) ("An outright refusal to grant leave to amend without a justifying reason is, however, an abuse of discretion." (internal quotations omitted)). Despite the fact that Plaintiff's claims under § 1671 fail, he should be permitted to amend his complaint in order to pursue his other claims. Therefore, this case is AFFIRMED as to the dismissal, but is REVERSED as to the issue of amendment and REMANDED with instructions to permit the filing of an amended complaint.

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART AND REVERSED IN PART and REMANDED[4].**

---

[4] Motion of SBC Internet Services, Inc. to file an amicus brief is GRANTED.

*Schneider v. Verizon Internet Services*, No. 09-55580

W. FLETCHER, dissenting:

Essentially for the reasons given in my dissent in *Hutchison v. AT&T Internet Services*, No. 09-55847, filed today, I respectfully dissent.